IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**MATTHEW JOHN MAJERNIK**<br><br>Debtor. | : CHAPTER 13<br>:<br>: Bankruptcy No.: 22-11096 (MDC)<br>:<br>: Hearing Date: October 6, 2022<br>: Hearing Time: 11:00 a.m.<br>: Hearing Place: Courtroom #2<br>: |

**MOTION OF MARY MAJERNIK AND TOM AND JANET SWAYNE
TO DISMISS OR CONVERT CASE**

Mary Majernik ("Mary") and Tom and Janet Swayne (the "Swaynes", collectively with Mary the "Movants"), by and through undersigned counsel, hereby jointly hereby request the entry of an order dismissing or converting the case pursuant to 11 U.S.C. §1307 (the "Motion"). In support thereof, Movants respectfully represent as follows:

**I.    JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A) and (O).

2. The statutory predicates for the relief requested herein are 11 U.S.C. §1307(c), Fed. R. Bankr. P. 1017, 9014.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and/or 1409.

**II.    STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY**

4. On or about April 29, 2022 (the "Petition Date"), Matthew Majernik (the "Debtor") filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.,* commencing the instant case.

5. The Debtor and Mary married on September 28, 2013.

6. The Debtor and Mary have one (1) child together.

4861-6247-1985

7. On September 20, 2017, Mary and the Debtor signed a loan agreement evidencing a debt to the Swaynes.

8. The Debtor did not include this debt to the Swaynes in his schedules.

9. The Swaynes filed a timely proof of claim for this debt in the amount of at least $28,174.00. (POC 9-1).

10. The Debtor and Mary separated on or about April 17, 2021.

11. The Debtor filed a Complaint in Divorce on May 12, 2021 in the Court of Common Pleas for Bucks County, Pennsylvania, commencing Case No. A06-21-60804-D-E (the "Divorce Action").

12. The Debtor was originally represented by counsel in the Divorce Action but has been self-represented in the action since April of 2022.

13. The Debtor has intentionally prolonged the Divorce Action by contesting formerly-agreed relief, refusing to abide by court orders, refusing to comply with discovery deadlines, and even objecting to simple requests from Mary (i.e. the payment of a charge of $7.50 per appointment necessary for his child to receive medical services).

14. During the pendency of the Divorce Action, and prior to the filing of this bankruptcy, the Debtor was obligated, first by an agreement between the parties and then by court Order, to make his share of the monthly payments on certain credit card debts to prevent dissipation of martial assets.

15. The Debtor either did not make those payments timely or did not make those payments at all, which led to the parties' bank account being overdrawn on numerous occasions.

4861-6247-1985

16. The Debtor, through his then counsel, alleged to Mary's counsel that he would only make the required deposits if he also had access to the credit card accounts and the ability to incur more debt for which Mary might become purportedly liable.

17. On January 1, 2022, Mary filed a Petition for Special Relief regarding the Debtor's failure to make payments towards the credit card debts.

18. On March 21, 2022, the state court entered an Agreed Order resolving this Petition for Special Relief.

19. Pursuant to the March 21, 2022 Agreed Order, both parties, "shall deposit an amount equal to half of the total monthly payment due on the Discover Card ending in 4182 and the Citi Card ending in 0579 (currently Two Hundred and Fifty-Nine Dollars ($259)) into the parties' joint PNC checking account (ending in 2146) no later than the 13th of each calendar month until further Order of Court or the written agreement of the parties."

20. Following the entry of the Agreed Order, the Debtor never made a single deposit, in violation of the Agreed Order.

21. The Agreed Order also specifically enjoined the Debtor and Mary from utilizing these credit cards or raising the associated credit limits.

22. On April 18, 2022, the court in the Divorce Action ordered the Debtor to provide full and complete responses to overdue discovery requests necessary to liquidate the alimony and equitable distribution claims.

23. The Debtor was required to provide these documents within 20 days of April 18, 2022 or be subject to sanctions.

24. The Debtor did not provide all of the requested documents.

25. The Debtor did not list Mary as a creditor or disclose the existence of the Divorce Action on his schedules or statement of financial affairs.

26. The Divorce Action now encompasses a request for divorce, alimony, equitable distribution, child custody and child support.

27. The alimony and equitable distribution matters within the Divorce Action implicate numerous overlapping debts and assets including:

    a. The Debtor's current residence;

    b. The Debtor's 401(k);

    c. The Debtor's investments in non-fungible tokens and cryptocurrencies[1];

    d. A debt owed by the Debtor and Mary to the Swaynes[2];

28. On his Schedule C (DI #1), the Debtor claimed an entireties exemption pursuant to 11 U.S.C. §522(b)(3)(B) in a real property located at 825 Wyoming Avenue, Croydon, PA 19102, and in certain bedroom furniture and electronics (the "Property").

29. The total claimed exempted value of the Property according to the Debtor is $135,726.00.

30. The real property – comprised of two lots with the same address – is actually worth $308,000.00, far higher than the $245,000.00 scheduled by the Debtor.

31. The Debtor also claimed an exemption in a 401(k) worth approximately $30,000.00.

32. At the 341 meeting on June 15, 2022, the Debtor admitted that he had intentionally omitted the Swaynes from his schedules.

---

[1] The Debtor intentionally omitted these assets from his schedules and statement of financial affairs.
[2] The Debtor also intentionally omitted this debt from his schedules and statement of financial affairs.

4861-6247-1985

33. At the 341 meeting, the Debtor admitted that he believed he had no duty to disclose the pending Divorce Action on his schedules.

34. At the 341 meeting, the Debtor admitted that he owned valuable cryptocurrency and non-fungible tokens.

35. The Debtor testified that he believed he had no duty to disclose these valuable assets because no question on the schedules specifically asked about cryptocurrencies.

36. At the conclusion of the 341 meeting, the standing chapter 13 trustee strongly suggested that an amendment of the Debtor's schedules was in order.

37. As of the date of this Motion, the Debtor has not filed any amended schedules.

38. The chapter 13 trustee has filed an objection to confirmation because of the Debtor's failure to amend.

39. The Movants filed an objection to confirmation and objection to the Debtor's exemptions (the "Objection") (DI #18).

40. The Objection points out that, because the Debtor's claimed exemptions in his 401k, home and other joint assets are not exempt as to Movants, the Debtor's Plan treats Movants worse than a chapter 7 liquidation.

41. Per the calculations in the Objection, a confirmable plan must pay the Swaynes over $22,000.00 and Mary over $157,000.00.

42. On April 29, 2022, the Debtor filed a Chapter 13 Plan (the "Plan") proposing to pay $325.00 per month for sixty months for total of $19,500.00. (DI #2).

43. The Debtor's Schedules show a net monthly disposable income of $331.41.

44. As of the date of this Motion, the Debtor has not filed any amended Plan addressing the issues raised in the Objection.

45. The Debtor missed the 28-day Plan amendment deadline for serving notice for the confirmation hearing dates of July 14, 2022, September 1, 2022 and September 29, 2022.

46. The Movants intend to notice the Objection for a hearing on a date prior to a hearing on the instant Motion.

47. Debtor has told Mary in connection with the Divorce Action that he will only come to an agreement if he is allowed to remain in the non-exempt jointly-owned Property indefinitely without paying Mary.

48. Debtor has told Mary in connection with the Divorce Action that his purpose in filing this bankruptcy case was to stay in the Property as long as possible without paying Mary or being forced to sell.

49. Debtor's case should be dismissed or converted because Debtor filed the Petition in bad faith for purposes of delay, has unreasonably delayed in amending his schedules and proposing a confirmable plan, and because he cannot – even in theory – propose a confirmable plan. Each of these reasons constitutes cause for dismissal or conversion under section 1307.

### III. LEGAL ARGUMENT

**A. Debtor Filed His Petition in Bad Faith**

50. A case may be dismissed or converted for cause. 11 U.S.C. § 1307(c). Section 1307 enumerates a nonexclusive list of causes justifying conversion, but the Court may consider reasons other than those enumerated as grounds for conversion. *See* 11 U.S.C. § 102(3), (5) ("In this Title . . . 'includes' and 'including' are not limiting . . . [and] 'or' is not exclusive."). Whether to dismiss a case is a question of fact. *See* <u>In re Lilley</u>, 91 F.3d 491, 496 (3d Cir. 1996) (describing the good faith inquiry as "a fact intensive determination").

51. Filing a petition in bad faith constitutes "cause" for dismissal or conversion under section 1307. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 373 (2007) ("Bankruptcy courts . . . routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause.'"). A bad faith determination with regard to a Chapter 13 petition is a fact-intensive inquiry to be determined by looking at the totality of the circumstances. In re Lilley, 91 F.3d at 496 ("The Seventh, Ninth and Tenth Circuits have held that lack of good faith in filing is sufficient cause for dismissal under section 1307(c). We agree.") citing In re Love, 957 F.2d 1350, 1355 (7th Cir. 1992).

52. The Third Circuit recognizes a non-exhaustive list of factors relevant to the totality of the circumstances, including: (i) the nature of the debt; (ii) the timing of the petition; (iii) how the debt arose; (iv) the debtor's motive in filing the petition; (v) how the debtor's actions affected creditors; (vi) the debtor's treatment of creditors both before and after the petition was filed; and (vii) whether the debtor has been forthcoming with the bankruptcy court and the creditors. Id.

53. The Debtor has substantial entireties property that can be reached by Movants but no other creditors. The unique nature of the debts to Movants means they are specially impacted by the delay caused by this case.

54. The Debtor filed the Petition just as the Divorce Action was advanced enough to constitute a threat to this entireties property.

55. From his conduct prepetition, the Debtor's strategy of bad faith actions to create delay is clear: he has consistently opposed events in the Divorce Action, then agreed to perform his legal duties, then immediately defaulted on his own agreement.

7

56. The Debtor's postpetition "settlement" offers show that the Debtor's main purpose in filing this bankruptcy was to remain in his current home while delaying payment to the Movants and other creditors as long as possible.

57. Postpetition, the Debtor has not even attempted to address the debts or Objection made by Movants.

58. The Debtor admits that he has not been forthcoming with the bankruptcy court or his creditors: he omitted Movants from his schedules entirely, despite acknowledging that he owed a debt to the Swaynes and had an allegedly-prepetition equitable distribution debt to Mary.

59. The Debtor omitted the Divorce Action – which he himself initiated – from the Scheules, and was unable to explain why he did so at the 341 meeting.

60. The Debtor testified at the 341 meeting that he omitted certain of his assets from his Schedules because he himself determined, contrary to his own counsel's advice, that those valuable pieces of property were not "assets" but were instead "gambling."

61. Despite acknowledging the serious intentional failure to disclose information in his Schedules, the Debtor has not even attempted to amend his Schedules.

62. Taken together, the Debtor's intentional course of conduct involving knowing misstatements of fact, knowing misrepresentations on the Schedules and an explicit attempt to delay without a prospect of actual reorganization shows the Debtor filed his Petition in bad faith, and cause therefore exists to dismiss or convert the case.

**B. Debtor Has Unreasonably Delayed in Proposing a Confirmable Plan**

63. Pursuant to section 1307(c)(1), cause to dismiss or convert exists where there has been "unreasonable delay by the debtor that is prejudicial to creditors." Id.

64. The Bankruptcy Code balances the rights of debtor and creditors, but cause exists when a debtor's inaction threatens to upset that balance: "[T]he debtor's burden to demonstrate that a reorganization is in process increases with the passage of time. Finally, because creditors' rights are constrained during the pendency of Chapter 13 proceedings, the Bankruptcy Code contemplates that a plan will be promptly confirmed so that payments to creditors may commence." In re Wile, 310 B.R. 514, 517 (Bankr. E.D. Pa. 2004).

65. Cause exists for dismissal under section 1307(c)(1) when the chapter 13 debtor has been given a reasonable time to propose a viable plan and it is clear that the debtor will be unable to do so. See In re Scott, 188 F.3d 509 (table), 1999 U.S. App. LEXIS 19774, 1999 WL 644380, at *1 (6th Cir. 1999); In re Barrett, 149 B.R. 494, 498 (Bankr. N.D. Ohio 1993).

66. "Similarly, a debtor's protracted inability to demonstrate the feasibility of a plan satisfies the requirement of 'prejudice' to creditors." In re Blanco, 520 B.R. 476, 484 (Bankr. E.D. Pa. 2014) citing In re Yarborough, 2012 Bankr. LEXIS 4403, 2012 WL 4434053, *2, 4-5 (Bankr. E.D. Tenn. Sept. 24, 2012)

67. The Court may rely upon a common-sense evaluation of a Debtor's assets and income in making an assessment of whether any amendment would be futile. See In re Asken, 2007 Bankr. LEXIS 1198, *13 (Bankr. E.D.Pa. 2007) (Dismissal with prejudice is warranted when "a realistic view of their resources shows that they simply cannot fund any plan").

68. The Debtor filed this bankruptcy in April 2022. Nearly six months into the case, the Debtor has not even filed accurate Schedules.

69. The Debtor has been unable to press for confirmation at three scheduled confirmation hearings, and has not even attempted to propose an amended confirmable plan.

9

70. The Debtor has not made any effort to resolve the issues raise by Movants, despite being on notice of those issues for months.

71. The Debtor's stated goal is to retain possession of the Property as long as possible, for the purpose of depriving Movants of the non-exempt value in the Property.

72. In fact, the Debtor cannot propose a confirmable plan.

73. As discussed in the Objection, the Debtor's exemptions are not valid as to the Movants.

74. In order to propose a confirmable plan, the Debtor must pay the Swaynes over $22,000.00 and Mary over $157,000.00.

75. Even if no other creditors receiver a dime, the Debtor must propose a plan with a base amount exceeding $179,000.00, requiring monthly payments of $2,983.33.

76. The Debtor's Plan proposes to pay $325.00 per month for sixty months for total of $19,500.00.

77. It is fundamentally impossible for the Debtor to generate net income that is 917.9% of his current net income.

78. Any Plan amendment is futile, as the Debtor cannot feasibly propose any confirmable plan.

79. The Debtor has stayed action by the Movants for over six months without any viable reorganizational theory, causing severe prejudice to Movants.

80. Cause exists to dismiss or convert the case.

### C. Movants Prefer Conversion to Dismissal

81. If "cause" exists under section 1307, this Court "may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate."

82. Mary is owed child support and alimony obligations, which are nondischargeable in any chapter bankruptcy.

83. The Debtor has substantial credit card debt that would impair his ability to fulfill these nondischargeable obligations if his bankruptcy is dismissed.

84. Meanwhile, the Debtor's other creditors aside from Movants would be entitled to de minimus payment – or no payment at all – in a properly-funded chapter 13 plan, and likely no payment in a chapter 7 either.

85. Conversion of the case to chapter 7 would discharge these non-joint debts without causing material prejudice to the non-joint creditors.

86. The Debtor has also indicated that he wishes to stay in the Property as long as possible, and will frustrate any attempt to sell the Property if his case is dismissed.

87. The Property is the main source of value available to Movants, who must receive roughly the same amount from that asset in either a chapter 13 or chapter 7.

88. Dismissal of the case will prevent the Debtor from discharging dischargeable debts necessary to give him a fresh start he needs in order to comply with his family obligations.

89. Dismissal of the case will allow the Debtor to continue to act in bad faith to frustrate recovery by the Movants without justification.

90. Conversion of the case will allow a trustee to administer and sell the non-exempt assets and pay Movants their due without delay.

91.     It is in the best interest of creditors and the estate that the case be converted for cause.

## IV.     **CONCLUSION**

WHEREFORE, for the foregoing reasons, movants Mary Majernik and Tom and Janet Swayne respectfully request that this Court enter an Order converting or dismissing Debtor's bankruptcy case and providing such other relief as this Court deems necessary and just.

Respectfully Submitted,

Date: September 8, 2022       By:   */s/ Turner N. Falk*
       Turner N. Falk, Esquire
       OBERMAYER REBMANN MAXWELL & HIPPEL LLP
       Centre Square West
       1500 Market Street, Suite 3400
       Philadelphia, PA  19102
       Telephone: (215) 665-3012
       Facsimile: (215) 665-3165
       Email: turner.falk@obermayer.com
       *Counsel to Mary Majernik and Tom and Janet Swayne*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : CHAPTER 13 |
| | : |
| | : Bankruptcy No.: 22-11096 (MDC) |
| MATTHEW JOHN MAJERNIK | : |
| | : |
| Debtor. | : |
| | : |

## ORDER CONVERTING CASE

AND NOW, this _____ day of _____, 2022, upon consideration of the Motion of Mary Majernik and Thomas and Janet Swayne to Dismiss or Convert (the "Motion")[1] and cause therefore having been demonstrated, it is hereby ORDERED as follows:

1. The Motion is GRANTED.

2. The case is hereby CONVERTED to a case under chapter 7.

BY THE COURT:

_____
Honorable Magdeline D. Coleman
Chief United States Bankruptcy Judge

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Motion.

4861-6247-1985

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| MATTHEW JOHN MAJERNIK, | : | Bankruptcy No.: 22-11096 (MDC) |
| | : | |
| Debtor. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, Turner N. Falk, Esquire, hereby certify that on September 8, 2022 a true and correct copy of the foregoing Motion to Dismiss or Convert, Notice of Response Deadline and Hearing Date were served via the Court's CM/ECF system and/or First Class Mail as indicated below, upon the individuals listed on the attached service list.

*/s/ Turner N. Falk*
Turner N. Falk, Esquire

4861-6247-1985

**SERVICE LIST**

Via CM/ECF and First Class Mail

DAVID M. OFFEN, Esq., as counsel for Debtor, Matthew John Majernik
The Curtis Center
601 Walnut Street
Suite 160 West
Philadelphia, PA 19106
dmo160west@gmail.com

United States Trustee
Robert N.C. Nix Federal Building
900 Market Street
Suite 320
Philadelphia, PA 19107
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST, Esq., United States Trustee
Office of the Chapter 13 Standing Trustee
1234 Market Street - Suite 1813
Philadelphia, PA 19107
ecfemails@ph13trustee.com

REBECCA ANN SOLARZ, Esq., on behalf of Creditor, PENNSYLVANIA HOUSING FINANCE AGENCY
KML Law Group, P.C.
701 Market Street
Suite 5000
Philadelphia, PA 19106
bkgroup@kmllawgroup.com

Via First Class Mail

Matthew John Majernik
825 Wyoming Avenue
Croydon, PA 19021

ACAR Leasing Ltd. d/b/a GM Financial Leasing
PO Box 183853
Arlington, TX 76096

AmeriCredit/GM Financial
Attn: Bankruptcy
PO Box 183853
Arlington, TX 76096-3853

Bank of America
Attn: Bankruptcy
4909 Savarese Circle
Tampa, FL 33634-2413

Bank of America, N.A.
PO Box 673033
Dallas, TX 75267-3033

Barclays Bank Delaware
Attn: Bankruptcy
PO Box 8801
Wilmington, DE 19899-8801

Citibank
Attn: Bankruptcy
P.O. Box 790034
St Louis, MO 63179-0034

Department of Education/Nelnet
Attn: Bankruptcy
PO Box 82561
Lincoln, NE 68501-2561

Discover Bank Discover Products Inc
PO Box 3025
New Albany, OH 43054-3025

Greensky
Attn: Bankruptcy Dept
5565 Glenridge Connector, Ste 700
Atlanta, GA 30342-4796

Greensky, LLC
1797 North East Expressway, Suite 100
Atlanta, GA 30329-2451

LVNV Funding, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

PECO
PO Box 37629
Philadelphia, PA 19101-0629

PHFA
211 North Front Street
Harrisburg, PA 17101-1466

PNC BANK RETAIL LENDING
PO BOX 94982
CLEVELAND OH 44101-4982

PNC Bank, National Association
1600 Market Street
Philadelphia, PA 19103-7211

PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541

US Department of Education c/o Nelnet
121 South 13th Street
Lincoln, NE 68508-1904